(76 Misc. Rep. 627.)

## In re WETMORE.

(Supreme Court, Special Term, Herkimer County. March, 1912.)

1. ELECTIONS (§ 168*)—NOMINATIONS—EMBLEMS.

The act which completes and effectuates the selection and designation of an emblem, within the statute providing for the selection of emblems to distinguish candidates nominated by petition, is the filing of a nominating petition and designation of emblem with the custodian of primary records.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 142; Dec. Dig. § 168.*]

2. ELECTIONS (§ 168*)—NOMINATIONS—EMBLEMS.

Where a candidate, whose nominating petition and designation of emblem were filed, declined the nomination, the emblem designated did not obtain any precedence, and could be selected by another candidate.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 142; Dec. Dig. § 168.*]

3. ELECTIONS (§ 168*)—PRIMARY ELECTIONS—NOMINATIONS—EMBLEMS.

Primary Election Law (Laws 1911, c. 891) § 58, relating to the preparation of the official primary ballot, and providing that candidates designated by petition shall be arranged in other than the party columns of the ballot in the chronological order in which the designations are filed, etc., manifests an intention to segregate each group of candidates independently nominated by petition, each group to appear under its distinct emblem; and, where there has been a selection by one group of an emblem to distinguish independent candidates on the primary ballot, other independent candidates for other positions selected by another group may not adopt such emblem.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 142; Dec. Dig. § 168.*]

Application of Wallace T. Wetmore for a determination under Election Law (Laws 1911, c. 891) § 125. Dismissed.

E. M. Brown (Charles D. Thomas, of counsel), for petitioner.
James P. O'Donnell, in pro. per.
Charles L. Earl, for J. E. Maynard.

MERRELL, J. This is an application for a determination that Wallace T. Wetmore, Earl C. Wetmore, Will A. Davis, and Bert Jones, all residents and electors of election district No. 2 of the town of Frankfort, Herkimer county, N. Y., are entitled to a device in the form of a square, one inch by one inch, printed in solid black, as an emblem to distinguish said persons as candidates for the Republican party posi-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

tions of county committeeman and members of the district committee, respectively, upon the official ballot to be used at the spring primaries of the Republican party to be held in said election district on March 26, 1912. The pertinent facts are substantially undisputed, and are as follows:

The duly constituted Republican party, through its duly elected committees, selected and placed in nomination candidates for all party positions to be filled at said primary election, and to be voted for in said district, choosing the Republican party emblem to distinguish said party candidates. Thereafter, by independent petition, certain duly enrolled voters of the Republican party of the Twenty-Seventh congressional district nominated opposition candidates for delegates and alternates to the Republican National Convention, and chose as the emblem or device to distinguish such independent candidates a square, one inch by one inch, printed in solid black. By such action the said independent candidates became entitled to a position upon the Republican official ballot for said primary election, and to be distinguished thereon by said emblem of the black square. The precise date of the filing of such petition and designation does not appear; but it is conceded that such designation and adoption of said device to distinguish said independent candidates for delegates and alternates to the National Convention were made prior to the filing of either the petition naming the applicants here as candidates for their respective party positions or that naming N. B. Palmer as a candidate for county committeeman hereinafter mentioned.

On March 5, 1912, other petitions were circulated, and the applicants herein were named as candidates for their respective party positions as members of the county committee and members of the election district committee of said election district. By said petitions the same device of a black square as that already adopted by the nominators of the candidates for delegates and alternates to the National Convention was selected as the emblem to distinguish the said candidates designated by said petitions. Sixteen duly enrolled voters of the Republican party of said election district verified said petition on said 5th day of March, but no attempt was made to file the same with the board of elections until some time on March 9, 1912. In the meantime, and on the 8th day of March, certain other duly enrolled Republican voters of said election district verified a petition in due form designating one N. B. Palmer as Republican county committeeman; said last-named petitioners also selecting the same emblem of the black square to distinguish their said candidate. This last-named, or Palmer, petition and designation was filed March 9, 1912, with the board of elections, some time prior to any attempt to file the petition designating the applicants. Some time later in the day on March 9th the applicants sought to file their petition, and it was finally received.

On March 11, 1912, the said H. B. Palmer, pursuant to section 50 of the Election Law (Laws 1911, c. 891). filed his declination as an independent candidate for Republican county committeeman, and therefore his name cannot be placed upon the official ballot.

[1] It is claimed on the part of the applicants here that their petition, having been verified three days prior to that nominating Palmer, has precedence, and that the filing of the Palmer petition of later verification did not constitute a prior designation of the black square emblem. I am unable to agree with this contention. The real act which, it seems to me, completed and effectuated the selection and the designation of the emblem was the filing with the custodian of primary records; and, were the case to depend upon that point, I would be compelled to hold that the Palmer petition, being first filed, obtained precedence.

[2] But by the declination of Palmer the petition designating him as a candidate and selecting the black square to distinguish him became a nullity. The petition nominating him named no committee to fill a vacancy, if any should occur. The only office of an emblem or device is to distinguish a candidate, to the end that the illiterate voter may cast his vote for such candidate so distinguished. The candidate declining to run, the usefulness of the emblem, which was personal to him, was at an end, and other electors were at liberty to adopt it to distinguish their candidates. The petitions naming the applicants being on file, the designation of the black square to distinguish the applicants would be effective; and, if the selection of the black square had only been made by the Palmer petition and that of the applicants, I would hold that, while the Palmer petition and designation obtained precedence by prior filing, by Palmer's declination these applicants became entitled to the use of the said emblem to distinguish their candidates, and that the prayer of the petitioners should be granted.

[3] But it seems to me, under all reasonable constructions of the statute, the fact that there had been a prior selection of the black square as the emblem to distinguish other independent candidates upon the same ballot made by distinct and different petitioners is an insurmountable obstacle to the use of such emblem by these petitioners. Concededly the selection of the black square to distinguish the candidates for delegates and alternates to the National Convention was prior to that of the petitioners. Duly qualified electors selected that emblem to represent their candidates as national delegates and alternates by action entirely independent of that under which the petitioners claim, and thereby they became entitled to that particular emblem to the exclusion of all the world. No one else had the right to adopt the device which marked the candidate or candidates of the first choosers. The confusion which must result from any attempt by one independent body of electors to adopt for its distinguishing device the emblem adopted by another independent body of electors to distinguish their candidate or candidates, and thereby to secure a position on the column under a common emblem, at once becomes apparent. For example, suppose the first selection of the common emblem was to designate a candidate for a minor party position, such as an election district committeeman, and another set of petitioners, acting independently of the first, selected the same emblem to distinguish a

candidate for a superior party position, such as member of the state committee, no one would seriously claim that by the last selection the first were bound to occupy the same column, and their vote possibly be jeopardized by that of those occupying a position nearer the top of the column.

The right of a group of petitioners to an emblem which they have selected to distinguish a particular candidate or group of candidates is as sacred as that of a political party to adopt and use its party emblem. And if any person can, through the adoption of an emblem already selected by other independent electors, secure a place in the same column, what would prevent an undesirable candidate obtaining advantage by such a course? This is not the case of an organized party, within the authority of Matter of Commissioner of Elections of Onondaga County, 64 Misc. Rep. 620, 120 N. Y. Supp. 580, where an attempt was made to break into a party organization. There is no party here, but several groups of electors acting independently for separate and distinct groups of candidates. The purpose of the applicants is apparent, and is conceded to be to group all independent nominations in a single column under a common emblem. This, I think, is contrary to the intent of the Legislature in enacting the primary election statute.

By section 58, relative to the preparation of the official primary ballot, the statute provides:

"Candidates designated by petition shall be arranged in the other columns (than the party column) of the ballot from left to right in the chronological order in which the designations were filed, but with the titles of the public offices and the party positions and the candidates designated therefor directly opposite the same titles and the names of candidates designated for the same offices and party positions in the committee column."

It seems to me that by this language the Legislature clearly manifested an intention to segregate each group of candidates independently nominated by petition, each group to appear under its distinct emblem. It often happens that a body of electors desires to choose or nominate only one candidate for public office by an independent petition and under an appropriate emblem, or to name candidates for only a part of the offices or party positions to be voted for, and choose their emblem to represent such candidate or candidates. If the Election Law is so construed as to allow other electors to use the same emblem for candidates for offices not filled by the petitioners first choosing the emblem, it would be possible for entire strangers to such independent movement to place their candidates for offices not filled by the original petitioners under such emblem, and in effect to compel the first petitioners choosing the emblem to vote for their candidate or candidates. The statute is clearly framed so as to avoid any such unfair action and make the same impossible; and I do not think that the Legislature intended to leave for the determination of the election commissioners the question of whether or not petitioners, claiming the right to use an emblem, are entitled so to do by reason of being friendly to an independent movement or candidate, first choosing the emblem.

The only way that the applicants can obtain a position on the official ballot is by means of a proper designation by petition and the choice of some device other than that theretofore selected by other petitioners.

The petition herein is dismissed.